**SO ORDERED.**

**SIGNED this 08 day of September, 2011.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

PIEDMONT CENTER INVESTMENTS, LLC,          CASE NO. 11-06178-8-JRL
                                           CHAPTER 11
    DEBTOR.

_____

### ORDER

This matter came before the court on the Bankruptcy Administrator's emergency motion for appointment of a chapter 11 trustee pursuant to 11 U.S.C. § 1104. A hearing was held on August 22, 2011 and August 25, 2011 in Raleigh, North Carolina to consider the motion.

### BACKGROUND

On August 11, 2011, Piedmont Center Investments, LLC ("debtor") filed its petition under chapter 11 of the Bankruptcy Code. The debtor is a Raleigh-based company which owns, leases, and manages commercial real estate in North Carolina. For the past twelve years, Roger van Santvoord Camp ("Mr. Camp") has been a partial owner and the managing member of the debtor, making him responsible for all aspects of property management. Mr. Camp was also the owner and manager of FEC Partners, LLC ("FEC"), which was established for purposes of opening a bowling alley in a shopping center owned by the debtor in Mebane, North Carolina.

On August 18, 2011, the Bankruptcy Administrator ("BA") filed an emergency motion to appoint a chapter 11 trustee pursuant to § 1104(a)(1) of the Bankruptcy Code. In support of her motion, the BA asserts that a chapter 11 trustee is necessary because on August 3, 2011, a federal grand jury in the Eastern District of North Carolina indicted Mr. Camp on fifteen felony counts related to bank fraud, false statements, and identity theft.[1] The allegations in the indictment are based on Mr. Camp's interactions with four different financial institutions.

In early 2009, with the approval of the debtor's investors, Mr. Camp decided to refinance the existing mortgage on the Mebane shopping center owned by the debtor. Mr. Camp applied for a commercial mortgage loan with KeySource Commercial Bank ("KeySource") in the amount of $3,800,000.00. However, KeySource would not approve the loan application without a personal guarantor with substantial financial assets. Mr. Camp did not meet this criterion. The indictment alleges that at this point, Mr. Camp knowingly falsified documents and forged the signature of Timothy Buckley ("Mr. Buckley") as guarantor taking personal responsibility for monthly payments. Mr. Buckley was partial owner of the debtor and a long-time friend of Mr. Camp. As Mr. Camp admittedly knew, Mr. Buckley was a man of substantial means, and KeySource was willing to approve the loan with him as a personal guarantor.

Beginning around the same time period, Mr. Camp needed to obtain financing for FEC's bowling alley project. Because Mr. Camp did not have sufficient funds to support the project, he submitted a commercial loan application to Capital Bank ("Capital"). Similar to the KeySource

---

[1] Specifically, Mr. Camp was indicted on four counts of bank fraud under 18 U.S.C § 1344, two counts of aggravated identity theft under 18 U.S.C. § 1028A, and nine counts of false statements in connection loan applications under 18 U.S.C. § 1014. Mr. Camp was also indicted by a Wake County grand jury on similar charges.

2

loan application, the indictment alleges that Mr. Camp knowingly forged Mr. Buckley's signature as personal guarantor and falsified other documents, inducing Capital to approve a loan in the amount of $2,000,000.00

Despite obtaining the $2,000,000.00 loan from Capital, by June 2010 additional funds were needed to complete the bowling alley project. After Mr. Buckley denied Mr. Camp a personal loan, Mr. Camp began discussions with TrustAtlantic Bank ("TrustAtlantic") regarding an unsecured loan of $500,000.00. As part of the loan application process, Mr. Camp represented to TrustAtlantic that Mr. Buckley had agreed to cosign the $500,000.00 line of credit. The indictment alleges that Mr. Camp's representations were made without Mr. Buckley's consent, and that he fraudulently created and submitted Mr. Buckley's personal financial statements.

Lastly, in November 2010, Mr. Camp applied for a $150,000.00 line of credit from North State Bank ("North State"). In the application package, Mr. Camp submitted a list of his assets. The indictment alleges that Mr. Camp included in this list a fictitious brokerage account with Triangle Securities, valued in excess of $880,000.00. This account in fact, did not exist. Mr. Camp also allegedly submitted a control agreement, which contained the forged signature of the president of Triangle Securities, Paul Reynolds, III ("Mr. Reynolds"), pledging the nonexistent brokerage account as security for the $150,000.00 line of credit.[2]

An evidentiary hearing was held on August 22, 2011 and August 25, 2011 at which Mr. Camp testified at length. During his testimony, Mr. Camp vigorously denied all of the

---

[2] Mr. Camp was indicted by a Wake County grand jury for charges arising from the North State transaction.

allegations set forth in the indictment. Specifically, Mr. Camp denied forging, or asking anyone else to forge, the name of another, including Mr. Buckley and Mr. Reynolds.

With respect to the North State loan application, Mr. Camp testified that he had not pledged the brokerage account at Triangle Securities. Instead, Mr. Camp claimed that he had only pledged certain real estate as security. According to Mr. Camp, he filled out the documents related to the non-existent brokerage account only as a hypothetical—a future possibility of what types of investments would be made if the pledged real estate was sold. Similarly, Mr. Camp testified that the actual documents he submitted to North State did not contain a control agreement pledging the brokerage account or the signature of Mr. Reynolds. He was unaware of how or when the control agreement and signatures became attached to the submitted documents. However, Mr. Camp failed to produce the original loan application or any written evidence in support of his contentions.

At the hearing, the BA entered into evidence several May 2010 e-mail correspondences between Mr. Camp and Mr. Buckley. In these correspondences, Mr. Camp attempted to persuade Mr. Buckley to provide additional funds for FEC's bowling alley project. It is evident from the content of the e-mails that Mr. Buckley was reluctant and ultimately declined to provide the financial support requested by Mr. Camp. Notably, Mr. Camp failed to mention Mr. Buckley's potential liability as personal guarantor in the event the bowling alley project failed and FEC defaulted on its obligations. In February and March 2011, Mr. Camp sent additional e-mails strongly discouraging Mr. Buckley from contacting officials at KeySource and Capital to discuss Mr. Camp's recent transactions.

Additionally, the BA introduced a letter found on Mr. Camp's home computer during the

federal investigation. The letter was written by Mr. Camp and addressed to his wife. In the letter, Mr. Camp gave his wife detailed instructions to follow after he faked his own death. He directs her to "file a missing persons report and make, and document, an attempt to find me for a little while, so that you establish the start date on when you can claim my death for insurance recovery." This was followed with a detailed, twenty-one step list, explaining how to financially maximize his "death."

## **DISCUSSION**

Section 1104(a) of the Bankruptcy Code provides that the court shall order the appointment of a chapter 11 trustee only in two instances:

> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interest of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a). As this court recently reiterated, "[t]he appointment of a trustee in a chapter 11 case is an extraordinary remedy, and there is strong presumption in favor of allowing the debtor to remain in possession." In re Tanglewood Farms, Inc. of Elizabeth City, No. 10-06719-8-JRL, 2011 Bankr. LEXIS 624, at *4–5 (Bankr. E.D.N.C. Feb. 10, 2011) (citing In re Heck's Props., 151 B.R. 739, 756 (S.D. W. Va. 1992)). The movant has the burden of proving gross mismanagement, fraud, or other cause by clear and convincing evidence. Id. at *5 (citing Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F.2d 239, 242 (4th Cir. 1987)).

The court has discretionary authority when determining whether the conduct of the

5

debtor or its manager rises to the level of "cause." A.H. Robins Co., 828 F.2d at 242. "The clearest examples [where appointment of a trustee is warranted] are those in which the debtor or its managers have engaged in serious fraud or dishonesty, or have grossly mismanaged the business." 7 Collier on Bankruptcy ¶ 1104.2[1], (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. Rev. 2007). However, if the court in its discretion determines that cause exists, the statute mandates that a trustee be appointed. See 11 U.S.C. § 1104(a) (stating that where cause is found, "the court *shall* order the appointment of a trustee.") (emphasis added).

In support of her motion for appointment of a chapter 11 trustee, the BA emphasized that the crimes that Mr. Camp was indicted for involved multiples incidents of fraud. Additionally, the BA argued that there are strong inferences of fraud in the e-mail correspondences between Mr. Camp and Mr. Buckley, as well as Mr. Camp's letter to his wife. Furthermore, the BA contended that in the unlikely event that all of Mr. Buckley's contested signatures and representations were authentic, the issues regarding the North State loan application remain, implicating fraudulent conduct on the part of Mr. Camp.

In opposition, the debtor contended that the BA, as the movant, has failed to prove cause by clear and convincing evidence. The debtor stressed that the probable cause standard for indictment is much lower than that required by 11 U.S.C. § 1104(a), and beyond the indictments, Mr. Camp's testimony was the only evidence presented. Notably, neither Mr. Buckley or Mr. Reynolds appeared to testify as to Mr. Camp's alleged fraudulent conduct. Furthermore, the debtor contends that Mr. Camp's letter to his wife was written in desperation. More importantly, the debtor pointed out the fraudulent scheme outlined in the letter was never carried out. In sum, the debtor argues that there is no definitive evidence that warrants a finding of cause as under 11

U.S.C. § 1104(a).[3]

Based on the facts as presented, the court finds that there is sufficient evidence of pre-petition fraud to meet the high standard associated with appointment of a chapter 11 trustee. Although the indictments are primae facie evidence of fraud, the court would not appoint a trustee on this basis alone. However, in this case, three pieces of evidence persuaded the court that there is sufficient evidence to displace Mr. Camp as management of the debtor.

First, the court finds that the inference arises from the e-mails that Mr. Camp was aware that Mr. Buckley was named as a personal guarantor in connection with FEC's bowling alley project, but was not disclosing that to Mr. Buckley because he did not want Mr. Buckley to know that these guarantees were on file. Oddly, the e-mails minimize Mr. Buckley's role in the transaction, rather than emphasizing that if he refuses to contribute more funds and the venture fails, he will be liable on his guaranty. Second, and more critical to the court's ruling, is Mr. Camp's testimony regarding his transactions with North State. The court finds Mr. Camp's testimony to be nonsensical. It is implausible that North State requested Mr. Camp to make up a securities account in great detail and offer it to North State as evidence of how the proceeds of real estate would be invested if it were ever sold. Most importantly, any evidence that could support Mr. Camp's testimony is in his control, yet he failed to produce any such evidence at the hearing. If the loan application was fraudulently, or otherwise, altered after it left Mr. Camp's control, he should have presented a copy of the application he signed to the court. Mr. Camp failed to do so. Third, Mr. Camp's letter to his wife, regardless of how it is characterized,

---

[3] Also present at the hearing was counsel representing KeySource. KeySource supported the debtor's position in that it believed there was a lack of evidence in support of the BA's motion.

7

demonstrates a sophisticated ability to concoct a fraudulent scheme and to hide assets.[4]

Based on the foregoing findings of fact, the court concludes that cause exists under 11 U.S.C. § 1104(a)(1). The facts support a finding of fraud by Mr. Camp, the member-manager of the debtor, which therefore requires the appointment of a chapter 11 trustee. Accordingly, the court hereby appoints John Northen, Esquire as chapter 11 trustee. Mr. Northen shall exercise all the powers and duties of a trustee as provided in 11 U.S.C. § 1006(a).

**END OF DOCUMENT**

---

[4] It is important to note that appointment of a trustee does not affect Mr. Camp's equity interest in the debtor, but rather, the appointment displaces only his ability to manage it.